UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LINDA D. LLOYD-MCCLAIN,      ) | |
|                              ) | |
|                    Plaintiff,     ) | |
|                              ) | |
|                     vs.              ) | No. 1:14-cv-01556-SEB-DML |
|                              ) | |
| CAROLYN W. COLVIN            ) | |
| COMMISSIONER OF SOCIAL       ) | |
| SECURITY,                    ) | |
|                              ) | |
|                  Defendant.     ) | |

## Report and Recommendation
## on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration that plaintiff Lynda D. Lloyd-McClain is not disabled.

### Introduction

Ms. McClain[1] applied on June 25, 2011, for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging that she has been disabled since April 27, 2011.[2] Acting for the Commissioner of the Social Security

---

[1] Counsel for the claimant refers to her as Ms. McClain, and the court does the same.

[2] At the hearing, counsel for Ms. McClain said the claimant would be willing to amend the onset date to the date she turned age fifty-five (October 23, 2012), asserting that the amended onset date would be consistent with the arguments

Administration following a hearing on February 15, 2013, an administrative law judge ("ALJ") found that Ms. McClain is not disabled. The Appeals Council denied review of the ALJ's decision on July 23, 2014, rendering the ALJ's decision for the Commissioner final. Ms. McClain timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. McClain argues that there were four primary errors by the ALJ. First, she contends the ALJ erred when he determined that Ms. McClain's headaches were not a severe impairment. Second, she claims that error led to a RFC determination that fails to incorporate all of her limitations. Third, Ms. McClain maintains that the ALJ erred in giving "'probative,' 'significant,' and/or 'great' weight" to the opinions of the Social Security Administration's examining and non-examining physicians when these examinations and file review took place during a "brief period" between May and August 2011 when she had a "respite from her severe headaches." Finally, Ms. McClain asserts that the ALJ erred in failing to consider her strong work history when deciding her credibility.

---

counsel made in a pre-hearing brief submitted to the ALJ. The pre-hearing brief "establishe[d] a contingency for an amended onset date based on a change in age category provided that the amendment would result in a fully favorable decision." (R. 11) (internal citation omitted). Although the ALJ determined there was some ambiguity in counsel's statement in light of what was presented in the pre-hearing brief, he "concluded for the purposes of this decision that the intent was to amend the onset date if and only if the amendment would result in a fully favorable decision." (*Id.*).

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Ms. McClain's specific assertions of error.

## **Standard for Proving Disability**

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  Ms. McClain is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy.  42 U.S.C. § 423(d)(2)(A).  The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability.  20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled.  Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the

Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are

4

supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

At the outset, the court addresses the scope of evidence in this case that may be considered and relied upon for remand. When the Appeals Council has denied review, as it did here, the court may not consider evidence that was not before the ALJ but was only "later submitted to the Appeals Council (or any argument based upon such evidence)." *Rice v. Barnhart*, 384 F.3d 363, 372 n.2 (7th Cir. 2004) (citing 42 U.S.C. § 405(g); *Eads v Sec. of Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993) (additional internal citations omitted). Here, Ms. McClain submitted exhibits 17F and 18F (R. 572-694) to the Appeals Council. (R. 1, 4). Ms. McClain relies in part on portions of these exhibits in arguing that the ALJ erred in his step two determination. While "technically a part of the administrative record,

the additional evidence submitted to the Appeals Council . . . cannot now be used as a basis for a finding of reversible error." *Rice*, 384 F.3d at 372 n. 2 (internal citations omitted). Therefore, the court will not consider this evidence in its review of the ALJ's decision. Furthermore, Ms. McClain has not argued for remand on the basis of sentence six of 42 U.S.C. § 405(g) for consideration of post-decision evidence. As a result, any such argument is waived.

I. **Substantial evidence supports the ALJ's step two decision and resulting RFC.**

In his step two decision, the ALJ found that Ms. McClain has the following severe impairments: (1) history of benign pituitary tumor; and (2) lumbar degenerative disc disease. (R. 14). Ms. McClain devotes a significant part of her brief to arguing that the ALJ's determination that her headaches were not a severe impairment was "clear error." Relying heavily on the Seventh Circuit's decision in *Moore v. Colvin*, 743 F.3d 1118 (7th Cir. 2014), Ms. McClain asserts that the ALJ's erroneous "conclusion that Ms. McClain's migraines did not satisfy even the *de minimus* threshold requirement" led to an RFC determination "that fails to address Ms. McClain's headaches, which would clearly interfere with her ability to work."

As the Seventh Circuit has explained, "[a]s long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process." *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010) (internal citations omitted). As a result, "the step two determination of severity is 'merely a threshold requirement.'" *Id.* at 927 (citing *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999)). Therefore, any error at step two "is of no

6

consequence with respect to the outcome of this case." *Castile*, 617 F.3d at 927. The ALJ found that Ms. McClain had other severe impairments and was thus "obligated to proceed with the evaluation process." *Id.*

The ALJ must consider both severe and non-severe impairments when assessing the claimant's RFC. While Ms. McClain makes much of *Moore* and claims it is "analogous," that case is distinguishable in several significant aspects. First, in *Moore*, the ALJ found the claimant's migraines constituted a severe impairment. 743 F.3d at 1121. The challenge on appeal was to the ALJ's RFC and step four determination that Ms. Moore could perform her past relevant work. *Id.* Ms. Moore testified that her migraines were "debilitating, and cause her to stay in bed much of the day, render her unable to deal with light and sound, and result in a heightened sense of smell that aggravates her nausea and headaches." *Id.* at 1122. The medical evidence showed that Ms. Moore was "diagnosed with intractable migraines and underwent implementation of a subcutaneous occipital nerve stimulator. . . ." *Id.* This treatment did not relieve the headaches. *Id.* at 1124. Years of records from her treating physicians, dating back to at least 2003, related to her "chronic painful migraines accompanied by photophobia and nausea and vomiting." *Id.* at 1123. However, in his credibility determination, the ALJ considered only a portion of the medical evidence and found that the many emergency room visits in the record "related to medication seeking rather than mere migraine control." *Id.*

In light of the foregoing, the Seventh Circuit concluded:

> [S]ignificant medical and testimonial evidence independent of questionable emergency room visits

7

> established a history of severe recurrent migraines. In light of that evidence, the ALJ erred in disregarding the migraines as a factor in determining Moore's ability to perform her past work. Specifically, the ALJ should have at least included in the RFC determination the likelihood of missing work. *The ALJ's decision did not reflect any likelihood of absences or breaks at work related to migraines, and that is simply unsupported by the record.*

*Id.* at 1127-28 (emphasis added). As will be discussed in greater detail below, the evidence in this case bears no resemblance to the evidence in *Moore*.

The ALJ discussed Ms. McClain's medical records regarding her headaches, including the fact that while she had reported a "complete resolution" of her headaches after her brain surgery, by August 26, 2011, her headaches had returned and Ms. McClain reported these headaches as "progressive in nature." (R. 15). The ALJ acknowledged that a July 18, 2012, physical examination "showed that the claimant's cranial nerves were intact." (*Id.*) He noted that an MRI was recommended and that the August 20, 2012, MRI showed a decrease in Ms. McClain's pituitary tumor. (*Id.*).

In his RFC determination, the ALJ properly considered Ms. McClain's testimony and medical records regarding her headaches even though he did not find her headaches to be a severe impairment. (R. 20, 22). He discussed Ms. McClain's testimony that she has "about three headaches each week, suggesting she might have more," and that these headaches last for "two to two and one-half hours." (R. 20). The ALJ further summarized her testimony as follows:

> She reported that her headaches had occurred daily in the past, implying that the frequency of her headaches had been reduced. The claimant said that she takes Tylenol for her

8

> headaches and will also rest in a quiet, dark room. She reported that she has no other treatment for headaches.

(*Id.*).

The ALJ posed a hypothetical to the vocational expert ("VE") regarding the effect on past relevant or identified jobs where the person could perform an average of 86 to 90 percent of an eight hour work day. (R. 81) Ms. McClain's counsel posed a hypothetical to the VE at the hearing where an individual "would have to take several unscheduled breaks, or let's say – unscheduled breaks to lie down, or possibly even a nap." (*Id.*). The ALJ asked for quantification, and Ms. McClain's attorney refined his hypothetical to a person needing to take three unscheduled breaks per day, at 30 minutes each, and to find a place to lie down. (R. 82). The VE testified that such behavior may be tolerated for a few days, but ultimately would lead to termination. (*Id.*). The ALJ determined that Ms. McClain could perform "productive work tasks for up to an average of 98 to 100% of an eight-hour workday, not including the typical morning, lunch, and afternoon breaks." (R. 19). In his decision, the ALJ specifically declined to adopt Ms. McClain's attorney's modifications to the RFC as reflected in his hypotheticals to the VE "because they are not supported by the medical evidence and claimant's testimony alone is inadequate to support such restrictive limitations." (R. 24).

Ms. McClain zeroes in on the following single sentence in the ALJ's decision: "While the claimant had headaches before the surgery, there is no documentation of headaches in the objective medical evidence." Quoting this sentence in isolation, Ms. McClain maintains that it is "contrary to his own line of questioning at the

9

hearing" and is "simply false" based on the evidence in the record. However, Ms. McClain unfairly omits the remainder of the ALJ's statement, which reads in its entirety as follows:

> While the claimant had headaches before the surgery, there is no documentation of headaches in the objective medical evidence. Although the claimant has complained of recurrent headaches, she has not been in need of doctor's office, emergency department or hospital treatment for headaches. There is no suggestion that the claimant's headaches cannot be treated with over the counter remedies.

(R. 22). As discussed previously, the ALJ analyzed Ms. McClain's medical records showing her headaches had returned. He analyzed her testimony that she treats her headaches by taking Tylenol and resting in a quiet, dark room and nothing more.

Ms. McClain's assertions of error regarding the ALJ's alleged failure to consider the extent of Ms. McClain's ability to perform regular and continuing work fail because they are, at bottom, requests that the court reweigh the evidence. That task is inappropriate for the court to undertake.

II. **The ALJ's step three analysis is supported by substantial evidence and the ALJ was not required to obtain additional expert opinions.**

Ms. McClain further argues that the ALJ's determination at step three that she did not meet a listing is not supported by substantial evidence. In particular, she contends that the ALJ could not reasonably rely on the opinions of the state agency consultants that no listing was met or equaled because these opinions predated the recurrence of her headaches, and the state agency consultants could

not have considered the subsequent treatment records. Relying on *Smith v. Apfel*, 231 F.3d 433 (7th Cir, 2000), Ms. McClain also asserts that where, as here, the record "demonstrated that the claimant's impairments had clearly worsened since the consultative examination and state Agency consultant review, the ALJ's 'duty to develop a full and fair record' required the ALJ in this case to order a new consultative examination (or at least an updated consultant review of the record)."

The ALJ specifically considered Listings 1.04 (Disorders of the Spine) and Listing 13.02 (Soft Tissue Tumor of the Head). Significantly, Ms. McClain's briefs do not even mention these listings (or any others), let alone address any listings criteria or cite any evidence that supports a finding that any listings were met or equaled. Furthermore, the non-examining agency physicians who reviewed the record and rendered opinions in December 2011 *did* have the opportunity to consider some treatment notes documenting the return of Ms. McClain's headaches. (R. 375-77, 388, 398-99).

Although Ms. McClain points to the Hearings, Appeals, and Litigation Law Manual (HALLEX) provisions for when to obtain a medical expert opinion as things the ALJ "could have" done, he was not *required* to do so in determining whether she met a listing. HALLEX Section I-2-5-34(A) is permissive (an ALJ *may* need to obtain a medical expert opinion when determining whether a claimant's impairment(s) meets a listed impairment(s)). An ALJ is required to receive an updated medical opinion from a medical expert on the issue of medical equivalence "[w]hen additional evidence is received that *in the opinion of the administrative law*

11

*judge* or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, 1996 WL 374180, at *3-4 (emphasis added). *See also Buckhanon v. Astrue*, 368 F. Appx. 674, 679 (7th Cir. 2010).

It is the claimant's burden to prove that her condition meets or equals a listed impairment. *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999). Although the ALJ "bear[s] some responsibility for developing the administrative record . . . [the ALJ is] also free to assume that a claimant represented by counsel has presented her strongest case for benefits . . . ." *Buckhanon*, 368 F. Appx. at 679. Ms. McClain knew in 2011 that, in the professional opinions of the state-agency consultants, she was not disabled. Ms. McClain, represented by counsel, never presented an opinion on meeting or equaling a listing, nor did she ask the ALJ to recontact the state agency consultants. At the same time, however, Ms. McClain was gathering other evidence for the record. In these circumstances, the inference is that Ms. McClain decided another expert opinion would not help her. *Id.* (court could not conclude ALJ erred or "any putative error was harmful;" ALJ expressly relied on medical judgment of state agency consultants and claimant's medical providers remained silent on question of medical equivalence).

Under these circumstances, the ALJ did not err by relying on the uncontroverted opinions of the state agency consultants. Furthermore, the ALJ considered and rejected Listings 1.04 and 13.02, and he explained his reasons for

12

doing so. Because they are supported by substantial evidence, the court finds no error.

### III. Substantial evidence supports the ALJ's credibility determination.

The court must give special deference to the ALJ's assessment of Ms. McClain's credibility. Only if it lacks "explanation and support," may the court determine that it is patently wrong and requires remand. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (internal citations omitted) (court's role is "limited to examining whether the ALJ's determination was 'reasoned and supported'" and only when the ALJ's determination lacks "any explanation or support" may the court "declare it to be patently wrong and deserving of reversal").

Social Security Regulation 96-7p describes the appropriate process for evaluating credibility and requires an ALJ to consider a claimant's subjective complaints in light of the relevant objective medical evidence, as well as any other pertinent evidence regarding the claimant's daily activities, the location, duration, frequency, and intensity of the claimant's symptoms, precipitating and aggravating factors, medication, treatment, and other measures to relieve the person's symptoms and their efficacy and side-effects, and any other factors relevant to functional limitations due to pain or other symptoms. *See* SSR 96-7p. It is not necessary for the ALJ to recite findings on every factor, but the ALJ must give reasons for the weight given to the claimant's statement so that the claimant and subsequent reviewers have a fair sense of how the claimant's testimony was evaluated. *Brindsi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003) (ALJ must

comply with SSR 96-7p in making credibility determination by articulating the reasons behind the determination).

Ms. McClain's only specific argument regarding the ALJ's credibility analysis is that the ALJ erred by failing to mention Ms. McClain's "strong work history." She maintains that this "is error that can only be addressed by remand for further consideration." As discussed above, however, the ALJ need only articulate the reasons behind his determination; he need not explicitly mention every factor. Furthermore, as the Seventh Circuit recently explained, "work history is just one factor among many, and it is not dispositive." *Loveless v. Colvin*, No. 15-2235, slip op. at 12 (7th Cir. Jan. 13, 2016).

Here, the ALJ specifically identified several reasons for his negative credibility assessment: the objective medical evidence did not support Ms. McClain's complaints to the extent alleged; Ms. McClain's activities of daily living showed she was more functional than she acknowledged at the hearing; Ms. McClain did not have an opinion from a medical source that corroborated her subjective complaints; and, significantly, Ms. McClain received unemployment benefits after the alleged onset date. (R. 14, 21-24). The ALJ explained:

> Unemployment benefits are not substantial gainful activity. Accordingly, the claimant's receipt of such benefits will not be deemed in of itself to be indicative of the capacity to engage in substantial gainful activity . . . . However, Indiana law provides that a person is eligible to receive unemployment benefits only if the applicant is physically and mentally able to work; is available for work; and is found to be making an effort to secure full-time work. . . The claimants receipt and acceptance of unemployment benefits results in conflicting assertions. To the Social Security

14

> Administration the claimant contends an inability to engage in fulltime competitive work, while simultaneously asserting to the State of Indiana that she can. These inconsistent assertions will be taken into consideration with respect to the claimant's overall credibility.

(R. 14) (internal citations omitted). At the hearing, the ALJ questioned Ms. McClain regarding her unemployment benefits and the work she looked for and reported to the state. (R. 39-40). She testified that she had a couple of interviews but did not receive any job offers. (R. 40).

Ms. McClain has not shown that the ALJ's credibility determination is unreasoned or unsupported, nor could she, because the ALJ provided rational bases for doubting that Ms. McClain's impairments impaired her to a degree that she could not work. Here, the ALJ's silence on work history "is not enough to negate the substantial evidence supporting the adverse credibility finding." *Loveless*, No. 15-2235, slip op. at 12-13. The ALJ's credibility assessment is not patently wrong.

## **Conclusion**

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision that Ms. McClain is not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Date: February 11, 2016

_Debra McVicker Lynch_
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system